(117 App. Div. 445)

### PEOPLE ex rel. BISHOP v. BISHOP.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

1. HABEAS CORPUS—RIGHT OF FATHER TO CUSTODY OF MINOR CHILD.

The return to a petition for a writ of habeas corpus for the removal of an infant daughter from the custody of her father, based on the ground that the father was living in adultery with his housekeeper, denied allegation of the petition, and the affidavit of the daughter annexed to the return averred that she was 18 years of age; that she had from infancy lived with her father; that her surroundings were pleasant; that she was receiving a good education, and was being cared for in a proper way; and that she did not desire to live with any of her relatives except her father. Held to require the dismissal of the proceedings on the return and the papers annexed thereto.

2. SAME.

On a petition for a writ of habeas corpus for the removal of a daughter from the custody of her father, the evidence failed to establish the allegation of the petition for the writ that the relations existing between the father and his housekeeper were improper, or that the morals of the daughter were in any way endangered by living with the father. The uncontradicted evidence showed that the daughter was over 20 years of age,

and that she had received a good education, and that she did not wish to live with any of her relatives except her father, who had always looked after her carefully and treated her with kindness. *Held*, that the court improperly granted an order preventing her from living with the father, especially in view of her marriage prior to the rendition of the order.

Appeal from Special Term, New York County.

Application by the people, on the relation of Leo Bishop, against Isaac C. Bishop for a writ of habeas corpus. From an order confirming a referee's report, sustaining the writ, and from an order denying a motion to amend the order confirming the referee's report and to vacate the writ, defendant appeals. Reversed, and proceedings dismissed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Charles O. Mass, for appellant.
Edward J. Newell, for respondent.

McLAUGHLIN, J. The relator is the son of the appellant. In November, 1904, the son presented a petition praying for a writ of habeas corpus, in which he stated that his sister, Miriam, was being illegally restrained of her liberty by her father. The alleged illegal restraint consisted, in substance, in keeping Miriam, against her will, in a house in which the father was alleged to be living in open adultery with one Sarah Hess. The mother of Miriam is, and for the past fourteen years has been, in an insane asylum, being hopelessly insane. In the return to the petition for the writ the father denied that he was living with Sarah Hess in the manner alleged, and asserted she was simply acting as his housekeeper, and he also denied that the daughter, Miriam, was restrained of her liberty. Attached to and made a part of the return was an affidavit of the daughter, in which she stated she was over 18 years of age; that she had a happy home; that she was receiving an excellent education, being at the time a member of the junior class of the Girls' Technical High School of the city of New York, that her social surroundings were pleasant and all that she desired; that she was of the age of discretion, and able to take care of herself; that it was her desire to live with her father; that the members of the families of her brothers were almost strangers to her; that none of them were congenial; that she was in no way restrained of her liberty; that it was her irrevocable desire to live with her father, and she prayed that her brother Leo might not succeed in his efforts to take her away from her father, who had always been affectionate, loving, and kind to her. A traverse was filed to the return, in which the relator admitted the good qualities of the sister, Miriam, and alleged it was to prevent her being ruined that he desired to take her away from her father. Upon the issue thus formed the matter was sent to a referee to take proof and make a report. The order of reference is dated February 6, 1905. The referee made a report in July following, in which he stated that Miriam was a very intelligent girl, and that though upwards of 18 years of age, and it was her wish to remain with the father, nevertheless she should be taken from him and given to the petitioner Leo, her brother, or to her aunt Sophie Bishop, as Miriam might elect, or, in

case she did not elect, then to such person as the Court might direct. Subsequently a motion was made by the relator to confirm the report of the referee, and on April 7, 1906, the learned justice who made the order of reference inserted a memorandum in the Law Journal to the effect that the facts revealed by the evidence convinced him that the welfare of Miriam required that the recommendations of the referee should be adopted and his report confirmed. On the day following Miriam married one Julius Hirsch, of which fact the learned justice referred to was informed on the 11th of April, and before any order had been signed, notwithstanding which fact, he on the 12th of April made an order confirming the referee's report sustaining the writ and awarding the custody of Miriam to either Leo or her aunt, or, in case she did not elect which one she preferred to live with, then to such person as the court might direct, and restraining the father from seeing or receiving Miriam in the presence of Sarah Hess. After this order had been made the father moved to dismiss the proceeding on the ground that it had abated by the marriage of Miriam and also to vacate the order of April 12th. This motion was denied, but the court amended the order of April 12th so as to make the date nunc pro tunc as of April 6th—two days prior to the marriage of Miriam—and also striking from it the provision directing the production of Miriam in court and directing the appointment of a guardian. In other respects the order was left as originally made. It is from both of these orders that the present appeal is taken.

There never was any occasion for the reference. Here was a girl upwards of 18 years of age, bright and intelligent. Her mother was in an insane asylum. She had from infancy lived with and been cared for by the father. Her surroundings according to her own affidavit were pleasant and all that she desired. She was receiving an excellent education and being cared for, so far as the return and her own affidavit show, in a proper way. She did not desire to live with her brother, the relator, or any of her relatives except her father. Indeed, so far as appears, none of her relatives except her father had been at all solicitous as to her care after the mother was committed to an insane asylum until this proceeding was instituted. The fact was not disputed that she had been well brought up and was well educated for a girl of her age; and simply because the father was unfortunate enough to have an insane wife, which necessitated, under the circumstances, if he kept house, his having a housekeeper, was no reason why his daughter should be taken from him because some one might imagine (even though it be his own son) that his relations with the housekeeper were meretricious. The proceeding, therefore, should have been dismissed upon the return and the papers annexed to it. The motion to confirm the referee's report should have been denied, and the proceeding dismissed upon the evidence taken by him. This evidence falls far short of establishing that the relations existing between the father and housekeeper were meretricious, or that the morals of the daughter were in any way endangered by living with the father. On the contrary, the uncontradicted evidence shows that the daughter Miriam was then over 20 years of age; that she had received a good education and is bright and intelligent; that she was not restrained of her liberty, and did

not wish to live with her brother Leo or her aunt, or with any one except her father, who had always looked after her carefully and treated her with great kindness. That the court, under such circumstances, should prevent her living with the father and compel her to live with her brother or aunt or some person whom the court might designate, is a proposition novel, if not startling. And equally novel is the proposition that the court, after it had been advised of the fact that Miriam had married, should make an order nunc pro tunc as of a date prior to the marriage confirming the referee's report, and restraining the father from seeing the daughter in the presence of Sarah Hess, even though the husband should insist upon it, or should insist upon living in that household. The marriage of Miriam would seem to have disposed of any question which might under any circumstances have theretofore existed as to her custody. Brown v. Rainor, 108 N. C. 204, 12 S. E. 1028. Whether it did or not, upon the evidence taken by the referee, the motion to confirm his report should have been denied.

The orders appealed from, therefore, should be reversed, with $10 costs and disbursements, the motion to confirm the referee's report denied, and the proceeding dismissed, with $10 costs. All concur.